IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIDAX, Incorporated<br><br>a Massachusetts Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ETA /Cuisenaire, a division of A. Daigger & Company, Incorporated<br><br>an Illinois Corporation,<br><br>Defendant. | 04-10926 MLW<br>Civil Action No.<br><br>MAGISTRATE JUDGE _____<br><br>Jury Trial Requested<br>RECEIPT # _55291_<br>AMOUNT $ _150_<br>SUMMONS ISSUED ___/___<br>LOCAL RULE 4.1 _____<br>WAIVER FORM _____<br>MCF ISSUED _____<br>BY DPTY. CLK. _____<br>DATE _5-10-04_ |

## COMPLAINT

Plaintiff, through its attorney, complaining of the Defendant, alleges as follows:

### THE PARTIES

1. The Plaintiff, DIDAX, Incorporated (hereinafter referred to as "DIDAX"), is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, having an office and place of business at 395 Main Street, Rowley, MA 01969.

2. Upon information and belief, the Defendant, ETA/Cuisenaire a division of A. Daigger & Company, Incorporated (hereinafter referred to as "ETA"), is a corporation organized and existing under the laws of the State of Illinois, having an office and place of business at 500 Greenview Court, Vernon Hills, Illinois 60061

1

## CLAIMS

3. This is an action arising under the Patent Laws of the United States, Title 35 United States Code.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court arises under Title 28 United States Code §§ 2201 and 2202 and under Title 28, United States Code, §§ 1331 and 1338(a).

5. Venue is proper in this judicial district pursuant to Title 28, United States Code, § 1391(c).

## COMMON FACTS AND COUNTS

6. ETA is the owner of U.S. Patent No. 6,685,477, entitled Method and Apparatus for Teaching and Learning Reading, hereinafter referred to as the " '477 " patent. A copy of the '477 patent is attached hereto as Exhibit A.

7. DIDAX has been selling an educational manipulative kit with an instruction book and a plurality of interconnecting colored cubes with numbers printed on the sides of the cubes for teaching arithmetic as early as 1980. The cubes are sold under the trademark UNIFIX (hereinafter referred to as "UNIFIX CUBES").

8. On or about May 1998, DIDAX entered into an agreement to publish a book entitled "Unifix Phonics" that included permanent stickers with letters to be affixed to the four sides of the UNIFIX CUBES.

9. On information and belief, Dennis Goldman, one of the joint inventors of the '477 patent, is president of ETA and an officer of A. Daigger & Company, Incorporated.

10. At the NSSEA Show, a major school supply show, held in Orlando, Florida on

November 4 - 6, 1999, DIDAX displayed the "Unifix Phonics" book with colored UNIFIX CUBES with stickers on all sides of the UNIFIX CUBES.

11. At the NSSEA Show held on November 4 - 6, 1999, Dennis Goldman was shown the "Unifix Phonics" book with colored UNIFIX CUBES with stickers on all sides of the UNIFIX CUBES.

12. On information and belief, on or about November 12, 1999, at the request of Dennis Goldman, DIDAX sent Mary Watanabe of ETA, the other of the joint inventors of the '477 patent, a sample "Unifix Phonics" book.

13. ETA sells a kit for teaching and learning reading under the trademark READING RODS that is described and claimed in the '477 patent. The kit includes a plurality of interconnecting cubes that are similar in configuration to the UNIFIX CUBES.

14. In the file wrapper of the '477 patent, Dennis Goldman, president of ETA and a joint inventor of the '477 patent, filed a declaration in which he stated "I have become aware of companies that have knocked off our READING RODS manipulatives and some of the reading indicia on them. Examples are shown in the attached copies of catalog pages from Didax (Exhibits T-Y) and Lakeshore (Exhibits Z, A1). These companies have not only included our interlocking blocks in their products, but they have also incorporated our method for using the products to teach reading and language skills. Without patent protection, I do not believe that we will be able to protect our substantial investment in the READING RODS teaching method."

15. At the National Council of Teachers of Math annual show in Philadelphia, PA on April 23, 2004, Richard Woldenberg, president of Learning Resources, Inc. and an

officer of A. Daigger & Company, Incorporated, requested a meeting with Brian Scarlett, president of DIDAX. On information and belief, Dennis Goldman, president of ETA and an officer of A. Daigger & Company, Incorporated, is also an officer of Learning Resources, Inc. At the meeting requested by Richard Woldenberg, Richard Woldenberg stated to Brian Scarlett that Dennis Goldman might take certain actions against DIDAX that would be very harmful to DIDAX in connection with the READING RODS, the subject of the '477 patent. An affidavit of Brian Scarlett is attached hereto as Exhibit B.

16. There is substantial and continuing justiciable controversy between plaintiff and defendant as to defendant's right to threaten or maintain suit for infringement of the '477 patent, and as to the validity and scope thereof, and as to whether any of plaintiff's products infringes any valid claim of the '477 patent.

17. Plaintiff alleges on information and belief that the '477 patent is invalid, unenforceable, and void for one or more of the following reasons:

   (a) that the plaintiff has not infringed any claim of the '477 patent;

   (b) that the defendant, through its attorneys, employees and agents, has made material misrepresentations, withheld relevant information, and has otherwise taken certain positions before the United States Patent and Trademark Office during the prosecution of its original patent application leading to the '477 patent that result in the '477 patent being invalid and/or unenforceable and that estops and/or precludes defendant from contending plaintiff has infringed any claim of the '477 patent;

(c) that the alleged invention, discovery or improvement purported to be patented in the '477 patent was known or used by others in the United States of America, its territories or possessions, or patented or described in a printed publication before the alleged invention or discovery thereof by the applicants for the '477 patent;

(d) that the alleged invention, discovery or improvement purported to be patented in the '477 patent was patented or described in a printed publication in this or a foreign country more than one year prior to the date of the application in the United States on which the '477 patent issued;

(e) that the alleged invention, discovery or improvement purported to be patented in the '477 patent was in public use or on sale in the United States of America, its territories or possessions, by various persons, more than one year prior to the date of the application in the United States of America on which the '477 patent issued;

(f) that the invention, discovery or improvement purported to be patented in the '477 patent was described and fully disclosed in patents granted on applications for patents by others filed in the United States before the alleged invention thereof by the applicants for the '477 patent;

(g) that the applicants for the '477 patent did not invent or discover the subject matter purported to be covered by the '477 patent. Specifically, prior to the application for the '477 patent, all material or substantial parts thereof had been invented by, known to, and used by others rather than by the applicants

of the '477 patent;

(h) that before the alleged invention by the applicants for the '477 patent of said invention, discovery or improvement purported to be covered by the '477 patent, the alleged invention, discovery or improvement was made in this country by another who had not abandoned, suppressed or concealed it;

(i) that the differences, if any, between the subject matter of the alleged invention, discovery or improvement of the '477 patent and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention, discovery or improvement was made to a person having ordinary skill in the art to which said subject matter pertains;

(j) that the claims of the '477 patent, and each of them, are not directed to patentable combinations and/or methods, but are directed to mere aggregations of parts, steps, means or elements which were matters of common knowledge in the art to which the patent relates before the alleged invention, and more than one year prior to the date of the application for the '477 patent;

(k) that the specification of the '477 patent does not contain a written description of the alleged invention, discovery or improvement purported to be covered by the '477 patent in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains or with which it is most nearly connected, to practice the alleged invention, discovery or improvement thereof;

(l) that the specification of the '477 patent does not set forth the best mode contemplated by the applicant for the '477 patent for carrying out the alleged invention, discovery or improvement purported to be covered by the '477 patent;

(m) that the specification of the '477 patent does not conclude with or contain in any manner, one or more claims particularly pointing out and distinctly claiming the subject matter which constitutes a patentable invention, or which was, or is, regarded by the applicants for the '477 patent as their invention, discovery or improvement;

(n) that the '477 patent was not obtained in a manner consistent with the provisions of Title 35, United States Code and is thus invalid and/or unenforceable. More specifically, the '477 patent is invalid and/or unenforceable for failure to comply with one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, 111, 112, 115, 116, 251, 252, 253, 286 and 288;

(o) that a proper oath or declaration was not filed by the applicants pursuant to the requirements of 35 U.S.C. §§ 115 and 116 and no supplemental oath or declaration was filed by the applicant before issuance of the '477 patent;

(p) that the defendant has breached its duty of candor to the Patent Office or has committed fraud on the Patent Office during prosecution of the application leading to the '477 patent.

18. If there be any invention in the subject matter of the '477 patent, which is denied, the

'477 patent nevertheless was not obtained in a manner consistent with the provisions of Title 35, United States Code.

19. Plaintiff alleges that the '477 patent is unenforceable against plaintiff due to defendant's laches and/or due to equitable estoppel.

20. Plaintiff alleges that the '477 patent is unenforceable for failure to make a timely disclaimer of invalid claims pursuant to the requirements of 35 U.S.C. §§ 253 and 288.

21. Defendant has so misused the patent in suit and has so used it in violation of the antitrust laws as to render it unenforceable.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff demands:

1. Entry of judgment that the defendant is without right or authority to threaten or to maintain suit against the plaintiff or its customers for alleged infringement of U.S. Patent No. 6,685,477; that said patent is invalid, unenforceable and void in law; and that said patent is not infringed by the plaintiff because of the making, using, selling, offering to sell, importing or using of any apparatus made or sold or used by the plaintiff and/or its customers.

2. Entry of a preliminary and permanent injunction enjoining defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it who receive actual notice thereof from initiating infringement litigation and from threatening plaintiff or any of its customers, dealers, agents, servants, or employees, or any prospective or present sellers, dealers, or users of

plaintiff's devices or apparatus or products, with infringement litigation or charging any of them either verbally or in writing with infringement of U.S. Patent No. 6,685,477 because of the manufacture, use or selling or offering for sale or importing devices or apparatus or products made by plaintiff, to be made permanent following trial.

3. Entry of judgment for plaintiff for costs and reasonable attorney fees incurred by the plaintiff herein.

4. Such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial.

DIDAX, Incorporated

Dated: May 10, 2004

By: /s/ Herbert L. Bello
Herbert L. Bello (BBO# 036620)
Scott P. Murphy (BBO# 555212)
One Hollis Street
Wellesley, Massachusetts 02181
Telephone: (781) 235-4457
Facsimile: (781) 235-6448
Attorneys for Plaintiff, DIDAX, Incorporated

didaxEta2.com.wpd
May 10, 2004